# Exhibit A

## Timeline of Events

- April 2025 – Angeline Wake sends an email out directing the team to spend more time on a cash application project. The deadline that was given for the completion of the project was unreasonable and the entire team had issues with the deadline.
- That same day I spoke with the team's senior Shannon Freiberg about the overwhelming amount of work being assigned to us and said that I needed to take a day for my mental health. The phone call ended. I took off for the day.
- After that day, Jeffery Emmerson and Shannon Freiberg began subjecting me to increased scrutiny following my disclosure of mental health concerns.
- Shortly thereafter, Supervisor Angeline Wake was laid off, and team Senior Shannon Freiberg was promoted to AR Manager.
- At this point everything is going well in the office. Projects are getting closed out. Progress is being made. Meetings are being held and millions in funds are being recovered. I have spoken to AR Manager Shannon Freiberg and HR Partner Brianna DuVerge regarding a promotion to team Senior and both assured me that it was nothing more than budget restraints right now, and that as soon as the budget opened up I'd be moved officially to the Senior role because I was already performing at senior level.
- August 2025 - No promotion has come, and the workload has increased substantially. Many employees were experiencing low morale and escalating pressure from upper management.
- On July 31st I took off due work for the remainder of the day and the next day, August 1st. I had spoken to HR Partner Brianna DuVerge about the stressful workload and the amount of hours I had been working and she suggested a break for a few days. Upon my return to work the next week, the team was assigned a few more projects that made the workload even more unbearable.
- I reached out to HR Partner Brianna DuVerge on August 5th, 2026, to talk about the workload and how stressful it has become. I also mentioned how the continued stress was really impacting my home life and the need to take some extended time off up to and including FMLA.

- Ms. DuVerge stated that she understood my concerns taking off for a few days and evaluating FMLA was a good choice and to reach out to my manager, Shannon Freiberg to finalize.
- I reached out to AR Manager, Shannon Freiberg, via teams chat and call to let her know what I had discussed with HR. This occurred around 9:30am to let her know what I discussed with HR about taking some time and FMLA leave. I asked her if there was anything that she needed from me before I took time over the next few days to prepare to take FMLA leave. I was told that all she needed was what was a pressing concern over the span of the next two weeks.
- I informed Ms. Freiberg of what was due and when and let her know that I would provide a full breakdown of how to complete the task via email.
- I returned to work the following Monday, August 11th, 2025 to start the FMLA process, having decided that I was going to move forward. I was informed that half of my team was fired so during my Monday morning check in with Ms. Frieberg, I asked for a team update.
- During this update she informed me of the departures of two team members and informed me that a new senior was starting on the team. Ms. Freiberg then went on to tell me that she and another person on the team had begun re-working billing that I had sent out because it was all inaccurate and I have been charging the customer incorrectly.
- I explained to Ms. Freiberg that I knew with absolute assurance that the bills I send out for this customer are 100% accurate and the error she identified is not the actual problem. This is a coding problem in our ERP system, which is why I left specific instructions on how to validate the billing before submission. I then informed her that she would need to correct the billing and explain to the customer that they were invoiced incorrectly.
- At this point Ms. Frieberg became verbally aggressive saying that the mistake was my fault because nobody knew when I would be coming back to work. She then starts telling me to not scream at her, though I am not screaming, and we end the call.
- Immediately after the call, I reach out to Brianna DuVerge and Greg Walton via Teams message to report the incident that has occurred between myself

and Ms. Frieberg. At this point all communication is via Teams Chat and Email messages.

- During this time, I am going through my emails to see what was sent in while I was out on break and I see an email from Ms. Frieberg stating that she needed a full accounting of my daily workflow. That my illnesses/unexpected absences are impacting the team. She also stated that she would not approve my previous leave or my current leave until I provided her that information. The email was sent to me and she copied our boss Jeffery Emmerson and HR Partner Brianna DuVerge. This email was new information for me. It was sent Tuesday, August 5th at 12:39pm, after we had already come to an agreement on what was needed for me to leave for the remainder of the week on our previous call
- The response to the reach out from HR was very different. People Manager Brianna DuVerge seemed to understand that there was a charged issue happening within the department and indicated that she and Greg Walton, Head of People, were on it because they understood how much of an asset I was to the team and the company.
- Head of People Greg Walton's reply was written and non-factual and I challenged his assessment as inaccurate because it went against statements out of his own mouth plus the statements of Brianna DuVerge and Shannon Freiberg. The response mischaracterized my work performance and did not address the issue I reported regarding Ms. Freiberg's conduct.
- At that point, a meeting was scheduled for the next day, August 12th, 2025 to discuss Ms. Freiberg's treatment of me and then discuss the next steps in the FMLA process. Mr. Walton sent a Team's message around 7:30am letting me know that he was available to talk as soon as I arrived to the office. I responded around 7:45am letting him know that after the previous day's events, I would not be physically in office. Mr. Walton responds letting me know that he understands and that he will schedule a Team's meeting Instead.
- Mr. Walton sent a meeting invite for 10:00am. Mr. Walton showed up to the meeting and terminated me. The reason he terminated me was for misallocation of $12 million in funds and harming the financial relationship between us and our banks and investors.

- This claim is 100% false. The money being referenced in my termination is tied to a master contract that restructured fixed assets for a major corporation that recently completed multiple company acquisitions.
- Why the Employer's Stated Reason is False:
- Approval Chain – The reconciliation process required multiple levels of approval and supervisory signoff before any funds were moved.
- Accounting Review – The accounting department reviewed and processed the entries after approval.
- Prior Validation – The reconciliation work had been previously reviewed and accepted without issue.
- Timing immediately after FMLA discussion/reporting HR Complaint – I provided written instructions explaining the ERP coding issue prior to taking leave.
- No prior warnings – No prior concerns or disciplinary actions regarding the project had ever been raised to me.
- The allegations regarding my work arose immediately after my discussions regarding FMLA leave and my complaint to HR regarding management conduct.
- The project was one that had multiple sets of eyes on it. I worked the entire reconciliation of the project to validate the accuracy of the financials and moved money accordingly, with two step verification and sign off. The final sign off coming from the Supervisor before being sent over to the Accounting Department to make the journal entry to move the funds to the Liability Account.
- I believe that the move to terminate me was based in discrimination of my mental health, an attempt to prevent me from taking FMLA, and retaliation for reporting a hostile work environment.

**Witnesses and Roles:**

Suzanne Roberts – Senior TMO Cash Application Specialist; aware of the reconciliation process and worked on it with me.

Angeline Wake – Accounts Receivable Supervisor; assigned the project to me. I verified my results and findings with her and Sr. Billing Manager Christopher Ziemann. She approved the funds to be transferred to the Liability Account and forwarded to Jack Nelson in accounting to make the GL move.

Christopher Zieman – Sr Billing Manager; coordinated the reconciliation of the project between Angeline Wake and me to the Executive Leadership Team. He approved the reconciliation reasoning and the move of the money.

Camil Harris – Witness to Shannon Freiberg's abusive rhetoric towards her entire team and the escalating pattern of abuse against the people on the team, up to and including termination. She witnessed the timeline of events and is willing to testify.

Shannon Freiberg – Offending Party

Jefferey Emmerson – Copied on emails

Gregory Walton – Copied on emails, messaged via Teams, spoke via Teams, spoke in person

Brianna DuVerge – Copied on emails, messaged via Teams, spoke with in person.

Lakia Martin – Witnessed the escalating pattern of abuse towards me and the falsification of the narrative.

Nafisa Khan – Revenue Manager hired to audit the reconciliations. Found no error in my work.

**Performance History:**

I was hired by Extenet Systems January 2023.

I was promoted to T-Mobile Subject Matter Expert in June 2023.

October 2023 my initial role changed, and my primary customer became T-Mobile.

I was awarded Best Collector in May of 2024 and June of 2024 for collecting over $20 Million in aged receivables.

In 2024 and 2025 I received the best performance reviews of the entire department. The only metric preventing me from having perfect scores is because the department did not meet its goals.

I began being included in key contributor level conversations determining the method in handling the redlining of contracts, how credits would be acknowledged in agreements, and multiple on-site visits to collaborate with the managing parties at T-Mobile Headquarters or Extenet Headquarters.

There are no write-ups in my file. I have an exemplary record.

Multiple processes and SOPs exist in the department because I create them and trained the team on it.

**Comparator Evidence:**

Multiple people involved in the reconciliation of the project that led to my termination received more favorable outcomes than myself.

Suzanne Roberts – Sr. Cash Application Specialist. She and I worked hand in hand on T-Mobile regularly. She was selected for layoff in 2024. She left the company before her offboarding date due to discriminatory practices.

Angeline Wake – Supervisor over the AR Department. Responsible for validating the accuracy of money transactions before they are moved. Directed me in the reconciliation of the TMO omnibus. She was laid off in April 2025 with severance with her job being immediately terminated.

Christopher Ziemann – Sr Biling and Collections Manager. Ran point for the team and approved the major decisions after consultation with the Executive Leadership. He was laid off with severance and a month to offboard responsibilities.

These individuals all actively made decisions that affected the accounts. All individuals had titles more senior than I. All individuals were separated from employment with severance and structured offboarding opportunities. Despite holding greater supervisory authority and approval responsibility over the reconciliation process, none of these individuals were accused of financial misconduct related to the project.

**Emotional and Medical Impact:**

The work environment became increasingly stressful and psychologically distressing due to shifting expectations, inconsistent metrics, staffing instability, and escalating managerial conduct. The metrics were inconsistent. The goals were always changing. The demands for more productivity with limited timing available became increasingly stressful as we continued to function without a plan.

During my employment with Extenet, I struggled with my mental health due to the increasing demands. I was regularly speaking to my psychiatrist, therapist, and people in my life about the company and its demands.

My psychiatrist had to repeatedly adjust my medication due to the increasing stress associated with my work environment. The company was aware of my medical accommodations and the need to take breaks away from people.

At the time of my FMLA request my mental health had severely deteriorated from the constant demands. I let it be known that I was seeking medical attention for the stress and strain.

My employment was terminated.

Prior to my termination, I was never issued corrective action, placed on a performance improvement plan, or given the opportunity to meaningfully respond to the allegations.

Since then, I have not been able to maintain consistent care for my mental health or any of my other medical needs.

The shame of having my reputation impacted has made interviewing and securing new employment difficult.

**Damages:**

Lost Wages

Lost Promotion

Lost Benefits

Emotional Distress

Reputational Harm

Difficulty Obtaining Employment

Medical Impact

Financial Impact: Bankruptcy

Supporting Documentation:

Emails

Teams messages

Performance reviews

Award Announcements

SOPs/process documentation

Billing instructions

FMLA Communications

Calendar invites

Termination Correspondence

Witness Statements

Dallas District Office EEOC
Received 2/12/2026

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## CHARGE OF DISCRIMINATION

EEOC Form 5A (August 2023)

For Official Use Only – Charge Number: 450-2025-11177

| | |
|---|---|
| **Personal Information** | First Name: Dominique MI: N Last Name: Landers<br>Address: 9208 Red Maple Lane Apt.:<br>City: McKinney County: Collin State: TX Zip Code: 75071<br>Phone: 214-972-4941 Home ☐ Work ☐ Cell ☑ Email: the.dominique.nicole@outlook.com |
| **Who do you think discriminated against you?** | Employer ☑ Union ☐ Employment Agency ☐ Other Organization ☐<br>Organization Name: Extenet Systems<br>Address: 5844 John Hickman Pkwy Suite: 600<br>City: Frisco State: TX Zip Code: 75034 Phone: 972972-7200 |
| **Why you think you were discriminated against?** | Race ☐ Color ☐ Religion ☐ Sex ☐ National Origin ☐ Age ☐ Pregnancy ☐<br>Disability ☑ Genetic Information ☐ Retaliation ☑ Other ☐(*specify*) |
| **What happened to you that you think was discriminatory?** | **Date of most recent job action you think was discriminatory:** 8/12/05<br>**Also describe briefly each job action you think was discriminatory and when it happened (estimate).**<br><br>I was employed by Respondent as an Accounts Receivable Specialist beginning in January 2023. I was terminated on August 12, 2025.<br><br>I have diagnosed mental health conditions, including cPTSD, anxiety, chronic depression, and agoraphobia, for which I receive ongoing treatment. Respondent was aware of these conditions.<br><br>During my employment. On August 6th I engaged in protected activity by notifying management and HR that I was unwell due to my medical conditions, needed to take PTO, and intended to submit paperwork for leave under the Family and |
| **Signature and Verification** | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my allegations and my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, or opposing job discrimination.<br><br>**I declare under penalty of perjury that the above is true and correct.**<br><br>**Signature:** Dominique Landers **Date:** 02/11/2026 |

was employed by Respondent as an Accounts Receivable Specialist beginning in January 2023. I was terminated on August 12, 2025.

I have diagnosed mental health conditions, including cPTSD, anxiety, chronic depression, and agoraphobia, for which I receive ongoing treatment. Respondent was aware of these conditions.

During my employment. On August 6th I engaged in protected activity by notifying management and HR that I was unwell due to my medical conditions, needed to take PTO, and intended to submit paperwork for leave under the Family and Medical Leave Act (FMLA). I took PTO as communicated.

Upon my return on August 11th, 2025, I reported to Human Resources that I had just experienced hostile and discriminatory treatment on a call that I just had with my manager, Shannon Freiberg. I reported these concerns to Greg Walton and Bri DiVerge.

The following day, August 12th, 2025, I was terminated.

The employer stated that I was terminated for allegedly misreporting $12.5 million in revenue and harming the company's reputation.

This stated reason is false. I was later informed by a witness that a review of my work was not concluded until after my termination on August 12th, 2025 and that no error was found in my reporting. I believe I was terminated because of my disability and in retaliation for engaging in protected activity.

**Subject:** TWC Civil Rights Division Complaint Process
**Date:** Sunday, August 17, 2025 at 6:06:27 AM Central Daylight Time
**From:** EEO Intake
**To:** the.dominique.nicole@outlook.com

Good day,

Thank you for contacting the Texas Workforce Division Civil Rights Division (TWCCRD). This is a generic email reply confirming receipt of your message.

TWCCRD is experiencing a high volume of calls and emails. Your inquiry is important to us and we respond to inquiries in chronological order of receipt. It may be **4-5 months** before we can review it. We appreciate your patience.

Be advised:

- Complainants may only file the same complaint with either TWCCRD or EEOC. Duplicate complaints will be dismissed.

- TWCCRD can only accept complaints within 180 days after your last date of harm.

Regards,

***TWC Civil Rights Division, Employment***
101 E. 15th Street, Room 154, Austin, TX 78778-0001
p: 888-452-4778/512-463-2642
f: 512-463-2643

**Office 2170**


**From:** Dominique Landers <The.DOMINIQUE.nicole@outlook.com>
**Sent:** Friday, February 6, 2026 10:06 AM
**To:** DALLAS FOIA
**Subject:** [External] Request for Issuance of Right-to-Sue Letter


[You don't often get email from the.dominique.nicole@outlook.com. Learn why this is important at https://aka.ms/LearnAboutSenderIdentification ]

CAUTION: The sender of this message is external to the EEOC network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to phishing@eeoc.gov.

Hello,

My EEOC inquiry/charge is assigned to the Dallas District Office. I am writing to request an update on the status and timing of issuance of my Right-to-Sue letter.
My submission date reflects August 12, 2025, and the statutory 180-day period is now complete or imminently complete. I have already indicated my intent to proceed and am requesting administrative closure and issuance of the Right-to-Sue letter.
Please let me know if any additional information is needed to facilitate issuance.
Thank you for your assistance.

Kind regards,
Dominique Landers
450-2025-11177
214-972-4941
Sent from my iPhone

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Dallas District Office**
207 S. Houston Street, 3rd Floor
Dallas, TX 75202
(800) 669-4000
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 02/25/2026

**To:** Ms. Dominique N. Landers
9208 Red Maple Lane
MCKINNEY, TX 75071
Charge No: 450-2025-11177

EEOC Representative and email: QUIDA BLACK
INVESTIGATOR SUPPORT ASSISTANT
QUIDA.BLACK@EEOC.GOV

---

**NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)**

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

**NOTICE OF YOUR RIGHT TO SUE**

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 450-2025-11177.

On behalf of the Commission,

For: Travis Nicholson
District Director

**Cc:**
Extenet Systems Inc
5844 JOHN HICKMAN PKWY
FRISCO, TX 75034

Please retain this Notice for your records.

**Subject:** RE: Request for Additional Information – Dominique Landers
**Date:** Tuesday, October 7, 2025 at 1:23:37 PM Central Daylight Time
**From:** EEO Intake
**To:** Dominique Landers

Good afternoon,

We received your response and the information is under review.

Respectfully,

**TWC Civil Rights Division, Employment**
Texas Workforce Commission
101 E. 15th Street, Room 154, Austin, TX 78778-0001
P: 888-452-4778/512-463-2642 F: 512-482-8465
eeointake@twc.texas.gov

**From:** Dominique Landers <The.DOMINIQUE.nicole@outlook.com>
**Sent:** Tuesday, October 7, 2025 12:08 PM
**To:** EEO Intake <eeointake@twc.texas.gov>
**Cc:** EEO Intake <eeointake@twc.texas.gov>
**Subject:** Re: Request for Additional Information – Dominique Landers

Good afternoon,

I am following up regarding the requested information below. Has it been reviewed or seen by anyone?

Regards,

Dominique Landers
Sent from my iPhone

> On Sep 24, 2025, at 7:59 PM, Dominique Landers <the.dominique.nicole@outlook.com> wrote:

Thank you for your request for clarification. Please see my responses below, organized in the order of your questions.

**Disability**

**Q: What is your diagnosed disability?**
A: I have been diagnosed with Complex PTSD (cPTSD), anxiety, and depression. I was later also diagnosed with agoraphobia.

**Q: What date did your doctor diagnose your disability?**
A: I was diagnosed with cPTSD, anxiety, and depression in **September 2019** by my treating physician, **Dr. Iyer**. I was subsequently diagnosed with agoraphobia in **December 2020**.

**Q: What date did you notify the Responding Party (employer) of your doctor's diagnosis and accommodation request?**
A: I notified Extenet of my disability in **June 2023**, when the company attempted to move me into an end-of-row cubicle that would have placed me in continuous contact with people walking through the main aisle.

**Q: What date did your doctor request an accommodation based on your diagnosed disability?**
A: In **June 2023**, Dr. Iyer confirmed and supported my accommodation request.

**Q: What accommodations did your doctor request based on your diagnosed disability?**
A: Dr. Iyer requested that I be permitted to sit in a **middle-aisle cubicle in the work environment**, away from high-traffic areas, to manage my agoraphobia symptoms.

**Q: Who did you submit your doctor's diagnosis and accommodation request to? Please provide full name and job title.**
A: I submitted my accommodation request to **Pamela Thomas (AR Supervisor at the time)**, **Christopher Ziemann (AR Manager)**, and the **Facilities Manager**. HR, including **Greg Walton (HR Director)**, was later made aware of the accommodation.

**Q: What was the Responding Party's response?**
A: The company honored that specific accommodation.

**Current Situation (FMLA / Short-Term Disability)**

At the end of **July 2025**, my condition worsened. I was out of work on **July 30, July 31, and August 1** due to a severe panic attack brought on by the growing

demands of my role. Neither my direct manager, **Shannon Freiberg**, nor her direct manager, **Jeffrey Emerson**, took any steps to mitigate or address these mounting pressures, despite being aware of the impact on my health.
On **August 6, 2025**, I began the process of requesting FMLA and short-term disability leave with **Bri Diverge (HR Business Partner)**. The plan, discussed with HR, was for me to first take a few days of **approved PTO** to consult with my family and physicians about moving forward with the leave.
I specifically requested the PTO and initiated the leave process due to the **mounting stress at Extenet**, which was significantly exacerbating my cPTSD, depression, and anxiety.

- After I **left for approved PTO on August 6, 2025**, **Shannon Freiberg** sent an email to me, with **Jeffrey Emerson** and **Bri Diverge** copied, **blaming me for the lack of process flow in the department** and stating she **would not approve any leave** unless I fulfilled certain requirements **before** my departure.
- This contradicted our **Microsoft Teams call earlier that day**, during which none of those conditions were mentioned.
- My direct manager, **Shannon Freiberg**, and her manager, **Jeffrey Emerson**, had been aware of the stress I was under since **March 2025**. Despite this, I was terminated before the FMLA/short-term disability process could be completed.

**Discrimination Complaint**

**Q: What specifically was the discrimination you reported?**
A: I reported a hostile work environment related to my disability. Specifically, my manager, **Shannon Freiberg**, stated in front of others that **"billing went out wrong to the customer because you were out sick and nobody knew when you were coming back."** I believe these remarks were directly tied to my disability and medical leave.

**Q: What date did you file your report?**
A: **August 11, 2025.**

**Q: Who did you file your report with and on what date? Please include full name and job title.**
A: **Greg Walton (HR Director)** and **Bri Diverge (HR Business Partner)** on **August 11, 2025**.

**Q: How did you make this report? (in writing, email, verbal)**
A: Via **Microsoft Teams chat**, as Extenet does not have a formal complaint process. Given Ms. Freiberg's prior behavior with employees and customers, I documented and notified HR promptly.

**Q: Please provide a copy of your report.**
A: I no longer have access to my company email due to termination, but I can provide **screenshots of the Teams complaint, the August 6 email, and related HR conversations**.

**Q: Please provide specific details on each incident, including dates, you believe you were discriminated against on your selected basis.**
A:

- **July 30–August 1, 2025:** I was out due to a severe panic attack caused by the growing demands of the role. Management was aware of the stress but took no steps to mitigate it.
- **August 6, 2025 (Teams call):** I discussed my approved PTO tied to the FMLA/STD process with Ms. **Freiberg**; no conditions were stated.
- **August 6, 2025 (after PTO began):** Ms. **Freiberg** emailed me (cc: **Jeffrey Emerson, Bri Diverge**) blaming me for departmental issues and stating she would not approve leave unless I met conditions that were never discussed on our Teams call.
- **August 2025 (following days):** Ms. **Freiberg** publicly stated that **"billing went out wrong to the customer because you were out sick and nobody knew when you were coming back."**
- **August 11, 2025:** I filed a **Teams complaint** with HR (Mr. Walton and Ms. Diverge).
    - **Ms. Diverge** responded professionally.
    - **Mr. Walton's response**, however, was hostile and inaccurate. In his five-point message, he claimed I was "responsible for significant errors" without acknowledging that these actions were directed by upper management. His response ignored the substance of my discrimination complaint and instead shifted fault back onto me.
- **August 12, 2025:** I was terminated. The reasons given were that I had caused "significant errors," including mapping **$12.5 million in revenue to a liability account** and contributing to billing problems. These reasons were fraudulent. The movement of funds between accounts was a practice established long before I assumed the role and was carried out under the **directives of upper management, including Christopher Simon**. Prior to my tenure, **Sue Roberts (Team Lead)** managed these same transactions in the same way. After her departure in July 2024, I continued the process as directed by my supervisor and management. Both **Sue Roberts** and **Angeline Wake (Supervisor)** can confirm that I was following instructions, not making independent decisions.

**Additional Context:** Prior to the issues with Ms. Freiberg, my performance was consistently valued highly. My reviews were regularly the best in the department, and in multiple meetings both **HR and Ms. Freiberg confirmed that I was to be promoted to Senior AR Specialist**. This directly contradicts

Mr. Walton's written communication after I reported Ms. Freiberg, where he attempted to portray me as a poor performer.

I believe my termination was discriminatory and retaliatory: it occurred one day after my protected complaint, and the stated reasons were pretextual. My strong performance record and planned promotion further prove that the employer's stated reasons were false and that the real motivation was retaliation for reporting discrimination and for initiating the FMLA/short-term disability process.

**Closing**
I respectfully submit this information to clarify my position. I am willing to provide supporting documentation (including screenshots of the August 6 email, the Teams complaint, Mr. Walton's five-point response, and witness information) upon request.

Sincerely,
Dominique Landers
214-972-4941
the.dominique.nicole@outlook.com

---

**From:** EEO Intake <eeointake@twc.texas.gov>
**Sent:** Friday, September 19, 2025 7:55 AM
**To:** Dominique Landers <The.DOMINIQUE.nicole@outlook.com>
**Subject:** Request for Additional Information – Dominique Landers

Good Morning,

The inquiry you submitted on 09/14/2025 was dismissed on 09/17/2025 because the narrative did not indicate a violation of the statues enforced by the TWCCRD.

**Please have these responses returned to this email address no later than 09/26/2025 or this inquiry will be dismissed due to insufficient information or no jurisdiction.**

**Please respond directly to these questions. These answers are needed to determine if the TWCCRD has jurisdiction. This inquiry will remain dismissed – however, based on your responses to these questions, it could be reopened.**

**You alleged disability.**
What is your diagnosed disability?
What date did your doctor diagnose your disability?

What date did you notify the Responding Party (employer) of your doctor's diagnosis and accommodation request?
What date did your doctor request an accommodation based on your diagnosed disability?
What accommodations did your doctor request based on your diagnosed disability?
Who did you submit your doctor's diagnosis and accommodation request to?
Please provide full name and job title
What was the Responding Party's response?

**You stated, 'I filed a complaint of employment Discrimination."**
What specifically was the discrimination you reported?
What date did you file your report?
Who did you file your report with and on what date?
Please include full name and job title.
How did you make this report? (in writing, email, verbal)
Please provide a copy of your report.
Please specific details on each incident, including dates, you believe you were discriminated due on your selected basis.

V/R,

Alex Stewart
Employment Intake Supervisor - Civil Rights Division
Texas Workforce Commission
101 E. 15th Street, Room 154
Austin, TX 78778-0001
P: 888-452-4778; Facsimile: 512-463-2643
Civil Rights Division - Texas Workforce Commission

Office Hours: 7:00am – 4:00pm

**From:** Dominique Landers <The.DOMINIQUE.nicole@outlook.com>
**Sent:** Friday, September 19, 2025 7:25 AM
**To:** EEO Intake <eeointake@twc.texas.gov>
**Subject:** Re: Regarding Inquiry Dismissal Notice

Good day,

So is the point to not actually assist? This definitely seems like a circle of, "we

don't actually want to help you protect your rights". At this point it would seem like I need to contact that state ombudsman to investigate why the TWC civil rights division is so unhelpful.

If no one can get past the screening because the website is so primitive how is anyone supposed to get help? You appeal and then it's just "submit another inquiry". This is wildly unhelpful.

Regards,

Dominique Landers
Sent from my iPhone

On Sep 19, 2025, at 7:02 AM, EEO Intake <eeointake@twc.texas.gov> wrote:

Good Day,

You may resubmit another inquiry if you are within 180 days from the last date of harm to the TWC Civil Rights Division. You may also submit an inquiry with the EEOC if you are within 300 days from the last date of harm.. EEOC contact information is 800-669-4000 or eeoc.gov.

Thank you,

*TWC Civil Rights Division, Employment*
101 E. 15th Street, Room 154, Austin, TX 78778-0001
p: 888-452-4778/512-463-2642
f: 512-463-2643

**From:** Dominique Landers <The.DOMINIQUE.nicole@outlook.com>
**Sent:** Thursday, September 18, 2025 5:28 PM
**To:** EEO Intake <eeointake@twc.texas.gov>
**Subject:** Regarding Inquiry Dismissal Notice

**CAUTION:** Email not from TWC System. Use care when clicking links and opening attachments.

Good afternoon,

I'm starting to feel like these intake boxes are situated in a way that we cannot provide the exact information that you are looking for to take the cases that are being submitted. I understand that TWC and

the EEOC are slammed with requests at this time because of the massive amounts of firings and layoffs that have been happening across the country.

However, I initially submitted my claim. My inquiry was dismissed. I followed up with an appeal and was told that based on what I submitted I needed to submit a new claim because the previous one could not be reopened.

I then resubmitted my claim on your site where I don't have full access to update proof or access to a box large enough to contain all of the information, however it did clearly state how my employer violated my rights.

I am appealing the determination that my intake does not state a valid complaint. I believe my case meets the criteria for both retaliation and disability discrimination under the Texas Labor Code and ADA.

1. Disability Discrimination

1. On August 11, 2025, my supervisor, Shannon Freiberg, stated during a call: "This is all because you were sick."
2. This comment directly tied workplace issues to my illness, which qualifies as protected under the ADA/Texas Labor Code.
3. Less than 24 hours later, I was terminated. This close timing, combined with my supervisor's remark, shows that my medical condition was used negatively against me.

2. Retaliation

1. On August 11, 2025, I reported my supervisor's hostile behavior to HR (Greg Walton and Bri Diverge) in good faith.
2. On August 12, 2025, the next day, HR Head Greg Walton terminated me.
3. I have a recording of the termination call, screenshots of my complaint to HR, and two witnesses (former supervisor Angeline Wake and former team lead Sue Roberts) who confirm the transactions and node terminations cited as the reason for my firing were management directives, not mistakes.
4. This shows the reasons were false and pretextual, and the firing was retaliatory.

Conclusion

I respectfully request that my intake be accepted as a valid complaint. I have direct evidence, witnesses, and documentation supporting both retaliation and disability discrimination.

Sincerely,

Dominique Landers

214-972-4941

The.dominique.nicole@outlook.com

Sent from my iPhone